# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA LAMAS, | Case No.: 1:19-cv-00852-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Juanita Lamas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 7, 8, 22.)

1

Plaintiff protectively filed an application for SSI on August 4, 2015, alleging disability beginning December 20, 2012. AR 20, 270-275.[3] Plaintiff's application was denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an ALJ. AR 127-130, 133-160. ALJ Timothy S. Snelling held a hearing on July 18, 2018, and issued an order denying benefits on August 21, 2018. AR 17-82. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 6-16, 267-269. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on July 18, 2018, in Fresno, California. Plaintiff appeared in person with her attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Cheryl Chandler also appeared. AR 39.

In response to questioning by the ALJ, Plaintiff testified that her impairments include obesity, asthma, and a history of internal derangement of the right knee. She underwent surgery on her right knee in March of 2010. Plaintiff has been diagnosed with bipolar disorder, depression, and a depressive disorder not otherwise specified. She has scoliosis, fibromyalgia syndrome, and migraines. She takes medication for her migraines, which helps but does not cure them. Plaintiff also has iron deficient anemia, anxiety, and a history of right shoulder rotator cuff repair surgery in 2011. She had gastric bypass surgery in September of 2010 and lost over 120 pounds, but medication caused her to regain some of the weight. Plaintiff has possible right elbow bursitis, a history of polysubstance abuse in reported remission, and degenerative disc disease of the lumbar spine. AR 46-48.

Plaintiff further testified that she is 46 years old and has a high school education. She was employed by Fresno Unified School District part-time for thirteen years but was let go in January of 2013. She was also employed on a part-time basis by Fresno City's Parks and Recreation Department until October of 2012. Plaintiff has not performed work for pay since then, although she has done some volunteer work. AR 48-53.

Plaintiff uses a single point cane that was given to her by her physical therapist more than five

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

years ago to help her feel more stable when walking. Plaintiff initially thought the cane would be a temporary measure. She estimates that she can walk approximately ten yards without the cane if she is really pushing herself. Plaintiff cannot remember the last time she walked without her cane because she falls frequently. In July of 2018, Plaintiff had fallen four times include one fall the previous week while using the cane. AR 54-58.

In response to questioning from her attorney, Plaintiff testified that she was experiencing a fibromyalgia flare-up at the time of the hearing. During her flare-ups, the pain becomes completely unbearable and she experiences tingling, stabbing, and burning in her hands, back of her neck, lower back and hip, feet, and arms. She experiences an average flare-up approximately three times per year and they last for four or five days. At the time of the hearing, Plaintiff was experiencing a bad flare-up that was on its eleventh day. AR 59-60.

Plaintiff also testified that she has psychiatric issues and believes she cannot return to work due to her psychiatric medications. Plaintiff's previous employer terminated her because she was on psychiatric medications and they did not want her around children. Since then, Plaintiff's psychiatric condition has worsened. She takes two types of medication for her insomnia and is less able to drive and to take care of others or herself. The medications do not completely put her to sleep and she sleeps approximately five to six hours per night. During the day, she is tired, sluggish, and slow. She has difficulty concentrating and used to crochet but now she forgets the patterns when she tries. She does not watch television and can try to complete a conversation if the topic is serious. AR 60-62.

Plaintiff lives with her four children aged twenty-six, twenty-four, twenty-two, and eighteen. Her oldest child works, and her youngest child is starting college, but her other two children do not work or go to school. Plaintiff receives food stamps for herself and one of her four children. Another one of her children is on Medi-Cal but she does not receive cash assistance. Plaintiff's youngest child is on disability because he is blind in one eye. She does not receive rental subsidy. Plaintiff and her children rent an apartment and her children pay the rent and household costs. AR 62-65.

Plaintiff testified that she experiences incontinence. She has accidents twice a day and always needs to be near a restroom. She estimates that she can stand for approximately ten to fifteen minutes with her cane and five minutes without her cane before she must sit. She cannot lift a gallon of milk

and sometimes has difficulty lifting a cup of coffee. Plaintiff is able to sit on a stool or bench, she does not need the back of a chair, and can sit for approximately ten minutes before she starts to fidget and twenty-five or thirty minutes before she has to stand or change positions. She rests twice a day from fifteen to forty minutes at a time. AR 65-67.

When asked by the ALJ, Plaintiff testified that she does not drink coffee and was asked by her doctor to stop because it could interfere with one of her medications. She wears protection in case she has an accident and uses the restroom several times during the day and night. Plaintiff tried medication, which helped some but not enough. She also testified that she underwent treatment that involved electric shock to her bladder, but it made it worse and she is currently waiting to schedule surgery. AR 68-70.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE Cheryl Chandler. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work experience as Plaintiff who is limited to medium work, can lift fifty pounds occasionally and twenty-five pounds frequently, can stand and walk for six hours in an eight hour workday, can sit for six hours in an eight hour workday, cannot climb ladders, ropes, and scaffolding, can frequently climb ramps and stairs, crouch, crawl, kneel, and stoop, and must avoid concentrated exposure to hazards, unprotected heights. The VE testified that at least three occupational titles at the medium exertional level representing thousands of jobs in the national economy would be available. AR 71-73.

For the second hypothetical, the ALJ asked the VE to assume that the same individual described in the first hypothetical could perform light work, lift and carry twenty pounds occasionally and ten pounds frequently, and occasionally perform postural activities. The VE testified that there would be work available as a cashier, counter clerk, and sales attendant. AR 73-74.

For the third hypothetical, the ALJ asked the VE to assume that the same individual described in the second hypothetical could not understand, remember, or carry out complex and detailed job instructions, make judgments on complex and detailed work-related job assignments, or cope with the stress normally associated with semi-skilled or skilled employment. Additionally, this individual could have no more than occasional face-to-face interaction with the general public, coworkers, and

supervisors. The VE testified that there would be work available as a marker, inspector hand packager, and garment sorter. AR 74-76.

For the fourth hypothetical, the ALJ asked the VE to assume an individual who can perform medium work, lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand, walk, and sit six hours in an eight-hour workday, occasionally balance and kneel, and cannot stoop, crouch, crawl, or climb ladders, ropes, or scaffolding. The VE testified that there would be no work available. The VE further testified that, for purposes of the Dictionary of Occupational Titles, bending and stooping are synonymous and if the limitation was for occasional bending and stooping there would be jobs available at both the medium and light exertional levels representing thousands of jobs in the national economy. AR 77-79.

Plaintiff's attorney then asked the VE hypothetical questions. For the fifth hypothetical, Plaintiff's attorney asked the VE to assume that the hypothetical individual described by the ALJ would not be able to stoop, crouch, or crawl due to her size and weight. The VE testified that there would be no work available. AR 79.

For the sixth hypothetical, Plaintiff's attorney asked the VE to assume a hypothetical individual who required use of a cane, must alternate between sitting and standing every thirty minutes, and would be unable to work two days per month. The VE testified that there would be no work available. AR 80.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-38. The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 4, 2015, the application date. AR 22. The ALJ identified exogenous obesity, asthma, internal derangement of the right knee status-post right knee surgery in March 2010, bilateral hip greater trochanteric bursitis, scoliosis and mild lumbar spondylosis, fibromyalgia syndrome, iron deficiency anemia, a history of right shoulder rotator

cuff repair in 2011, bilateral thoracic outlet syndrome, bilateral bicipital tenosynovitis, left partial rotator cuff tear verses left shoulder impingement syndrome verses left shoulder bursa/tendons disorder, a history of gastric bypass surgery in September 2010, bilateral medial epicondylitis and possible right elbow bursitis, lumbar and cervical degenerative disc and joint disease, migraine headaches, carpal tunnel syndrome, osteoarthritis, leg varicosity with ulcer and inflammation, gastro-esophageal reflux disease, hypothyroidism, a history of polysubstance abuse in reported remission, bipolar disorder, major depressive disorder, and anxiety disorder as severe impairments. AR 22-23. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of light work and could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for six hours and sit for six hours in an eight-hour workday with normal breaks, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, must avoid concentrated exposure to hazards, unprotected heights and uneven terrain, could have no more than occasional face-to-face interaction with the general public, supervisors, and co-workers, defined as no more than one-third of the workday with each group, and could not understand, remember, and carry out complex and detailed job instructions, make judgments on complex and detailed work related job assignments, or cope with the stress normally associated with semiskilled or skilled employment. AR 24-30. The ALJ further found that Plaintiff had no past relevant work, was defined as a younger individual on the date the application was filed, had at least a high school education, and was able to communicate in English. AR 31. Transferability of job skills was not an issue because Plaintiff did not have past relevant work. AR 31. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 31-32. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 5, 2015, the alleged onset date, through the date of the decision. AR 32.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this

Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff raises the following challenges to the ALJ's decision: (1) the ALJ erred by rejecting consultative examiner Samuel Rush, M.D.'s limitations on stooping, crouching, and crawling in

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

developing Plaintiff's RFC; (2) the ALJ erred in rejecting Plaintiff's subjective symptom testimony; (3) the ALJ erred in rejecting the lay witness testimony; (4) the ALJ erred in evaluating Plaintiff's limitations due to her mental impairments; and (5) the ALJ erred by failing to develop the record. (Doc. No. 15 at 16-23.)

### A. Dr. Rush's opinion

Plaintiff first argues that the ALJ erred by rejecting Dr. Rush's opinion that Plaintiff cannot stoop, crouch, or crawl due to her size and weight. (Doc. No. 15 at 16.) According to Plaintiff, the ALJ did not point to any evidence to support his assessment, offered only conclusory statements that do not constitute specific and legitimate reasons, "play[ed] doctor" and made his own independent medical findings, and ignored evidence favorable to Plaintiff. (*Id.* at 16-17.)

In assessing a claimant's RFC, the ALJ may consider any statements provided by acceptable medical sources. *See* 20 C.F.R. § 416.927.[5] Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Id.* If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31.

---

[5] For all claims filed on or after March 27, 2017, new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. The claim here, however, was filed before March 27, 2017. Thus, the Court analyzes Plaintiff's claim pursuant to the treating source rule set forth in section 416.927.

On November 10, 2015, consultative examiner Dr. Rush provided an opinion which, in relevant part, found that Plaintiff "can occasionally bend and kneel" but "[d]ue to her size and weight she cannot stoop, crouch or crawl." AR 485. In his opinion, the ALJ reasoned that "the examination findings controverted" Dr. Rush's opinion that Plaintiff cannot stoop, crouch, or crawl. AR 30. Dr. Rush's opinion regarding Plaintiff's ability to stoop, crouch, or crawl was contradicted by the opinions of State agency physicians D. Tayloe, M.D. and E. Wong, M.D., both of whom opined that Plaintiff could frequently stoop, crouch, or crawl. AR 30, 106, 122. As a result, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount this portion of Dr. Rush's opinion.

Contrary to Plaintiff's contention that the ALJ did not point to any evidence in support of his assessment, the ALJ explicitly identified Dr. Rush's examination findings as controverting the opinion that Plaintiff cannot stoop, crouch, or crawl. An ALJ may properly discount a physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As indicated by the ALJ, Dr. Rush's examination findings indicated that Plaintiff's range of motion of her back and major joints was normal, straight leg-raising test was negative bilaterally to ninety degrees, Plaintiff was able to walk without difficulties, she could walk on her toes and heels, her Romberg was normal, her motor strength was 5/5 in all extremities, and she had normal muscle bulk and tone. AR 27, 483-484. Additionally, body movements in Plaintiff's hip, knee, and ankle joints and feet were within normal limits and she had no joint deformities, crepitus, effusion, or tender or trigger points.

AR 483-484. Likewise, the VE testified at the hearing that bending, which Dr. Rush opined Plaintiff could perform occasionally, was synonymous with stooping for purposes of the Dictionary of Occupational Titles. AR 77-79. Thus, the ALJ identified a specific and legitimate reason for rejection this portion of Dr. Rush's opinion and his finding was supported by substantial evidence.

Likewise, the ALJ's basis for discounting Dr. Rush's opinion regarding Plaintiff's ability to stoop, crouch, and crawl was not conclusory as Plaintiff contends. "An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin,* 759 F.3d 995, 1013 (9th Cir. 2014). Here, in contrast, the ALJ set out a detailed and thorough summary of Dr. Rush's opinion, stated his interpretation thereof, and made findings. He did more than merely offer his conclusions or set forth boilerplate language and the Court is able to reasonably discern the ALJ's path for the purpose of review. *See Jose v. Berryhill,* 2018 WL 1244763 at *6 (D. Or. Mar. 12, 2018) ("[E]ven if the ALJ could have stated each reason more clearly, the Court is still able to 'reasonably discern' the ALJ's path.").

Plaintiff's additional argument that the ALJ "play[ed] doctor" and made his own independent medical findings is likewise without merit. It is within the ALJ's province to synthesize the medical evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (Beezer, C.J., dissenting) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Therefore, it was appropriate for the ALJ to weigh the relevant evidence in determining that Dr. Rush's opinion regarding Plaintiff's inability to stoop, crouch, or crawl was inconsistent with his examination findings.

With respect to Plaintiff's argument that the ALJ ignored evidence favorable to her, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of

evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation omitted). The ALJ expressly acknowledged Dr. Rush's opinion that Plaintiff was not able to stoop, crouch, or crawl, and found it to be inconsistent with examination findings. The ALJ's decision recognizes that Plaintiff has some work limitations, however, he gives little weight to this portion of Dr. Rush's functional assessment. In reaching his decision, the ALJ weighed the relevant evidence in the record and did not impermissibly give more weight to evidence which supported his conclusion over equally relevant evidence. Notably, Plaintiff does not cite to any objective medical evidence supporting the degree of limitations opined by Dr. Rush even though the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that Dr. Rush's opinion that Plaintiff could not stoop, crouch, or crawl was inconsistent with examination findings to be supported by substantial evidence and based upon proper legal standards.

**B.  Plaintiff's subjective symptom testimony**

Plaintiff contends that the ALJ improperly gave little weight to her subjective complaints because they were inconsistent with the medical evidence without citing to specific medical findings or opinions. (Doc. No. 15 at 20.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 25. The ALJ did not find that Plaintiff was

malingering and was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

The ALJ first discounted Plaintiff's testimony because it was inconsistent with the objective medical evidence. AR 25-29. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, in addition to finding that Plaintiff's testimony was inconsistent with the medical record, the ALJ also noted that Plaintiff's impairments were stable with limited treatment. AR 29. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that improvement with conservative treatment undermined allegations of disabling symptoms); *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). The ALJ accordingly provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

Although Plaintiff asserts that the ALJ erred by failing to identify the specific medical evidence that contradicted Plaintiff's testimony, a review of the ALJ's opinion indicates that he properly linked Plaintiff's symptom testimony that he found not to be credible to particular parts of the record. In *Brown -Hunter v. Colvin,* 806 F.3d 487 (9th Cir. 2015), the Ninth Circuit held that an ALJ errs "by making only a single general statement that the claimant' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above, without identifying sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Id.* at 493 (citation and quotation marks omitted.)  There, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully . . . [to] ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.  The ALJ's failure to identify the testimony that was found not to be credible and to link that testimony to the particular parts of the record supporting the non-credibility determination was legal error.  *Id.*

Here, in contrast, the ALJ summarized Plaintiff's testimony regarding the persistence, intensity, frequency, and limiting effects of her impairments.  AR 25.  The ALJ then devoted

approximately four pages and ten paragraphs to detailing the specific medical evidence in the record and explaining why it did not support that testimony. AR 25-29. Despite Plaintiff's arguments to the contrary, a review of the ALJ's analysis reveals that it was replete with citations to the medical record. AR 25-29. Ultimately, the ALJ found that Plaintiff's allegations regarding the persistence, intensity, frequency, and limiting effects of her impairments were not credible because they were inconsistent with the medical record. AR 29. The ALJ not only succinctly summarized Plaintiff's symptom testimony, but he also clearly indicated what evidence he found to be inconsistent. Thus, unlike *Brown-Hunter,* the Court need not speculate about the basis of the ALJ's determination or substitute its conclusions for the ALJ's. *See Brown-Hunter, supra,* 806 F.3d at 495. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan,* 169 F.3d at 600 (citation omitted). Thus, the Court finds no error with the ALJ's credibility determination.

Finally, Plaintiff contends that the ALJ erred by finding that Plaintiff benefitted from her treatment because temporary relief does not mean Plaintiff can function in the workplace. (Doc. No. 15 at 21.) However, Plaintiff does not cite any support in the record for her contention that any relief was "temporary" as she contends. To the contrary, as the ALJ noted, the medical evidence indicated that Plaintiff reported that physical therapy and medication were helping her impairments and her mental impairments were stable with minimal mental health treatment. AR 27-29. Where evidence may support more than one rational interpretation, "the Court may not substitute its judgment for that of the Commissioner." *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999); s*ee also Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). Here, the ALJ's interpretation of the evidence as indicating that Plaintiff's impairments were stable with limited treatment was rational and supported by substantial evidence.

### C. Lay witness testimony

Plaintiff similarly argues that the ALJ erred by rejecting Serena Hernandez and Edward

Williams' lay testimony by stating that it was inconsistent with medical evidence without citation to the medical record. (Doc. No. 15 at 20.)

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must consider, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001); *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005) ("An ALJ need only give germane reasons for discrediting the testimony of a lay witness."). In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does not "clearly link his determination to those reasons[.]" *Lewis,* 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982)

In this case, the ALJ provided germane reasons to reject the lay witness testimony at issue. The ALJ properly noted that the objective medical evidence did not support either witness' testimony and nothing further was required. AR 29. This was a germane reason to reject Ms. Hernandez and Mr. Williams' testimony. *See Bayliss,* 427 F.3d at 1218 ("Inconsistency with medical evidence is one such reason [to reject lay testimony]. The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error."). The ALJ was not required to cite to the specific portions of the medical record that contradicted this testimony and his failure to do so was not error.

### D. Plaintiff's mental impairments

Plaintiff argues that the ALJ erred in evaluating Plaintiff's limitations due to her mental impairments as part of her RFC. (Doc. No. 15 at 21-23.) Specifically, she argues that the ALJ gave little weight to the medical opinions on file pertaining to Plaintiff's mental impairments and relied on his own functional analysis without pointing to any medical opinions that supported his conclusion. (*Id.*)

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §

14

416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). With respect to Plaintiff's mental impairments, the ALJ's RFC finding in this case stated that Plaintiff could have no more than occasional face-to-face interaction with the general public, supervisors, and co-workers, defined as no more than one-third of the workday with each group, and could not understand, remember, and carry out complex and detailed job instructions, make judgments on complex and detailed work related job assignments, or cope with the stress normally associated with semiskilled or skilled employment. AR 24.

Consultative examiner Mary Lewis, Psy.D. and State agency medical consultants H. Amado, M.D. and A. Garcia, M.D. provided medical opinions regarding the effects of Plaintiff's mental impairments. *See* AR 30, 103-104, 119-120, 472-479; *see also* 20 C.F.R. § 416.927(a)(2) (defining medical opinions as statements that "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can do despite your impairment(s), and your physical or mental restrictions."). Dr. Lewis opined that Plaintiff was capable of managing her own funds and did not have any significant functional impairments. AR 477-478. According to Dr. Lewis' opinion, "[f]rom a mental health perspective, the claimant appears to be able to function adequately." AR 477. The State agency medical consultants, in turn, opined that Plaintiff's mental impairments were non-severe. AR 103-104, 119-120.

The ALJ gave each of these medical opinions little weight "because evidence available at the hearing showed the claimant was more limited than previously determined." AR 30. In other words, the ALJ disagreed with all medical opinions in the record concerning Plaintiff's mental impairments and found that, contrary to the consultative examiner and State agency physicians' opinions, Plaintiff's impairments would result in some work-related restrictions. The ALJ's RFC determination was solely based on his own interpretation of Plaintiff's testimony and the medical evidence. Without relying on any medical opinion regarding what work-related restrictions would be appropriate, the ALJ added

limitations to the RFC and concluded these limitations were sufficient to address Plaintiff's impairments.

It is well-settled that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (opining that an ALJ is not qualified to extrapolate functional limitations from raw medical data).

The Commissioner contends that, because the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. (Doc. No. 20 at 9.) However, the ALJ in this case did not simply synthesize the medical evidence and opinions to reach an RFC determination. The ALJ's RFC determination regarding Plaintiff's mental impairments appears to be based solely on treatment notes and Plaintiff's testimony. *See* AR 30. However, Plaintiff's treatment notes do not provide sufficient indications of Plaintiff's functional limitations and are unclear as to their impact on Plaintiff's ability to work. Thus, the ALJ apparently formulated an RFC based on his interpretation of the medical evidence, which is improper. The ALJ was not qualified to translate the data into functional limitations and engage in his "own exploration and assessment" of Plaintiff's impairments. *See McAnally v. Berryhill,* 2020 WL 1443734, at *7 (S.D. Cal. Mar. 25, 2020) (quoting *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)).

Without a medical opinion to support the conclusion that Plaintiff could have no more than occasional face-to-face interaction with the general public, supervisors, and co-workers, and was unable to understand, remember, and carry out complex and detailed job instructions, make judgments on complex and detailed work-related job assignments, or cope with the stress normally associated

16

with semiskilled or skilled employment, the ALJ's RFC lacks the support of substantial evidence. *See Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's . . . capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence"); *Goolsby v. Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp v. Colvin,* 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since . . . the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record."). Accordingly, the ALJ erred in evaluating Plaintiff's RFC.

The Court must also consider whether the ALJ's error was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted). An ALJ's error has been found to be harmless where it is clear from the record that they did not alter the ALJ's decision. For instance, in *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 434 (9th Cir.1988) (per curiam), the Ninth Circuit held that an ALJ's error in classifying the claimant's past relevant work as "light" was inconsequential where the record supported the ALJ's determination that the claimant was able to perform other light work and therefore was not disabled. Similarly, in *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993), the Ninth Circuit held that even if the ALJ erred in failing to mention the claimant's inability to stay in one position to the vocational expert, such error was harmless because the claimant had not shown that he was unable to return to his previous job as a receiving clerk and inspector, which, the record demonstrated, involved a combination of sitting and standing.

The Court finds that the ALJ's error in this case was harmless. The limitations that the ALJ

included in the RFC pertaining to Plaintiff's mental impairments were more restrictive than those to which the medical opinions of record opined, yet the ALJ nonetheless found that there would be work available with those more stringent limitations. Plaintiff also does not identify how, if at all, this error was harmful. Having reviewed the record, the Court finds that the error was inconsequential to the disability determination and therefore does not warrant remand.

### E. Duty to develop the record

Finally, Plaintiff asserts that the ALJ had a duty to further develop the record and obtain updated opinion evidence regarding Plaintiff's mental impairments. (Doc. No. 15 at 23.) According to Plaintiff, the ALJ should have obtained an opinion from a treating or examining source because the nonexamining physicians' opinions were outdated and did not consider the complete evidence of record, therefore triggering the ALJ's duty to develop the record. (*Id.*) The Court disagrees.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). The ALJ's duty to "conduct an appropriate inquiry" is triggered only where evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Id.*; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff's suggestion that the ALJ had a duty to further develop the record as a result of the existence of medical records post-dating the state agency physicians' review is unpersuasive. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The mere existence of medical records post-dating a State agency physician's review does not in and of itself trigger a duty to further develop the record. *See, e.g., Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC). Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations resulting from her mental impairments even though the burden is on the claimant to establish disability. *See Terry,*

903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Because it is the Plaintiff's burden to present evidence of disability, the absence of an opinion from a physician does not give rise to a duty to develop the record. Rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss*, 427 F.3d at 1217; *Alvarez v. Astrue*, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

The ALJ did not find that the record was ambiguous or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence. Indeed, the Court notes that the ALJ asked Plaintiff's attorney at the hearing if the record was complete and he responded that it was. AR 43. Under these circumstances, the Court finds that the ALJ was not obligated to further develop the record as Plaintiff suggests.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Juanita Lamas.

IT IS SO ORDERED.

Dated:  **November 9, 2020**            /s/ *Barbara A. McAuliffe*          _
                                                                 UNITED STATES MAGISTRATE JUDGE